**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Jennifer Stephens,

      Plaintiff

v.

Zoetis, Inc.,

      Defendant

Case No.: 2:25-cv-00989-JAD-EJY

**Order Granting Motion to Dismiss
and Closing Case**

[ECF No. 24]

    Jennifer Stephens's dog, Sara, was prescribed Librela, an FDA-approved prescription-only medication, to treat pain related to her osteoarthritis.[1] Stephens alleges that the drug caused adverse side effects in Sara and other similarly situated dogs, and those side effects ultimately led Stephens to have to euthanize Sara.[2] So Stephens brings this putative failure-to-warn class action[3] against Librela's manufacturer, Zoetis, alleging that it failed to disclose these side effects and "hundreds" of additional incidents.[4] She theorizes that she and her putative class of dog owners wouldn't have purchased Librela if Zoetis had adequately warned of these side effects, and no reasonable, properly warned veterinarian would have prescribed it.[5]

    Zoetis takes the position that Librela's label plainly warned veterinarians—including Sara's—of every symptom that Stephens alleges.[6] And veterinarians have prescribed tens of millions of doses of Librela, so "hundreds" of additional incidents would effectively increase the

---

[1] ECF No. 20 at ¶¶ 10–12.

[2] *Id.* at ¶ 13.

[3] Class certification has not been sought or granted.

[4] ECF No. 20 at ¶¶ 17–18.

[5] *Id.* at ¶¶ 22–27.

[6] ECF No. 24 at 8, 9, 14.

risk factor by less than a thousandth of a percent.[7]  Zoetis thus moves to dismiss Stephens's claims based on the learned-intermediary doctrine, which immunizes drug manufacturers from failure-to-warn claims if the manufacturer informed a learned intermediary of all relevant risks.[8] I find that the learned-intermediary doctrine applies to drug manufacturers and that Librela's label adequately warned veterinarians of its side effects.  So I grant Zoetis's motion, dismiss all claims, and close this case.

## Discussion

**A.      The learned-intermediary doctrine applies to drug manufacturers.**

In Nevada, a failure-to-warn claim requires showing "(1) the product had a defect [that] rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury."[9]  "In such cases, the lack of a warning functions as the relevant 'defect.'"[10]  Here, Stephens pleads two failure-to-warn claims: one based on strict liability and the other on negligence.[11]  The elements of both claims are virtually identical.[12]

---

[7] ECF No. 30 at 6.

[8] ECF No. 24 at 16.

[9] *Motor Coach Indus., Inc. v. Khiabani by & through Rigaud*, 493 P.3d 1007, 1011 (Nev. 2021).

[10] *Id.*

[11] ECF No. 20 at 12–14.

[12] *Forest v. E.I. DuPont de Nemours & Co.*, 791 F. Supp. 1460, 1464 (D. Nev. 1992) ("As one district judge succinctly put it, "[t]he Court will leave the task of distinguishing between negligence and strict liability in the duty to warn to those who count angels on the heads of pins."); *Ontiveros v. Coloplast Corp.*, 2022 WL 3084429, at *6 (D. Nev. Aug. 3, 2022); *Forest v. Vitek, Inc.*, 884 F. Supp. 378, 380 (D. Nev. 1993) ("[T]here is no practical difference between an action in negligence for breach of one's duty to warn and an action in strict liability for a product defect due to inadequate warning or labeling.").  Both parties seem to agree on this point.  *See* ECF No. 29 at 8.

The learned-intermediary doctrine provides an affirmative defense to some failure-to-warn claims in the medical context. The doctrine discharges a manufacturer's duty to warn under either a strict-liability or negligence theory when the manufacturer adequately warns a learned intermediary of all the relevant risks.[13] It "'defines the scope of a manufacturer's duty to warn in context of prescription drugs' or medical devices . . . by providing that the manufacturer's 'duty to warn runs *to the physician*, not to the patient.'"[14] So traditionally, "[u]nder the learned-intermediary doctrine, a drug manufacturer is immune from liability to a patient taking the manufacturer's drug so long as the manufacturer has provided the patient's doctor with all relevant safety information for that drug."[15]

When the Nevada Supreme Court first addressed the learned-intermediary doctrine in *Klasch v. Walgreen Co.*, it adopted the doctrine and applied it to pharmacists filling prescriptions that doctors prescribed.[16] "Nevada pharmacists" thus "have no duty to warn their customers of the generalized risks inherent in the prescriptions they fill."[17] The *Klasch* court reasoned that "between the doctor and the pharmacist, the doctor is in the best position to warn the customer of a given medication's generalized risks" and the doctrine "prevents pharmacists from constantly

---

[13] *In re Bard IVC Filters Prod. Liab. Litig.*, 969 F.3d 1067, 1076 (9th Cir. 2020) ("Under the learned-intermediary doctrine, 'the manufacturer of a prescription drug or medical device does not have a duty to warn the patient of the dangers involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer.'").

[14] *Himes v. Somatics, LLC*, 549 P.3d 916, 924 (Cal. 2024).

[15] *Klasch v. Walgreen Co.*, 264 P.3d 1155, 1158 (Nev. 2011).

[16] *Id.* at 1159 ("[W]e . . . adopt the learned-intermediary doctrine in the context of pharmacist/customer tort litigation.").

[17] *Id.*

second-guessing a prescribing doctor's judgment simply in order to avoid his or her own liability to the customer."[18]

The Nevada Supreme Court has not yet extended the learned-intermediary doctrine to drug manufacturers.[19] But other judges in this district have predicted that the Nevada Supreme Court would.[20] Those judges have reasoned that the rationales from *Klasch* apply to manufacturers just as they do to pharmacists. A drug manufacturer, "like the pharmacist, is not in the best position to weigh the risks and benefits of" a drug "in a particular patient,"[21] while a learned intermediary like a doctor or veterinarian "has the benefit of knowing the patient's specific situation."[22] The Restatement (Third) of Torts also shares this view and similarly "retains the 'learned[-]intermediary' rule" for drug manufacturers.[23] And the Nevada Supreme Court recognized in *Klasch* that immunizing drug manufactures is the doctrine's traditional

---

[18] *Id.* at 1157–58.

[19] The court thus must predict how the Nevada Supreme Court would decide an issue if it has not decided an issue. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007). "[D]ecisions from other jurisdictions, statutes, treatises, and restatements" can inform this prediction. *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004).

[20] *See, e.g.*, *Whipple v. C.R. Bard, Inc.*, 2024 WL 1345227, at *5 (D. Nev. Mar. 30, 2024); *Heinrich v. Ethicon, Inc.*, 455 F. Supp. 3d 968, 973 (D. Nev. 2020) ("Other judges in this district have predicted that Nevada would apply the learned intermediary doctrine to drug and medical device manufacturers."); *Hix v. Zimmer Biomet Holdings, Inc.*, 2022 WL 946914, at *5 (D. Nev. Mar. 29, 2022) ("Courts within the Federal District Court of Nevada, including this Court, have determined that the Nevada Supreme Court will likely extend the doctrine into the medical device context.").

[21] *Heinrich*, 455 F. Supp. 3d at 974; *Whipple*, 2024 WL 1345227, at *5 ("Similar to the position of the pharmacist, a medical device manufacturer is not in the best position to determine whether its device is appropriate for a specific patient.").

[22] *Flowers v. Eli Lilly & Co.*, 2015 WL 12622058, at *2 (D. Nev. July 10, 2015) (citing *Phillips v. C.R. Bard, Inc.*, 2014 WL 7177256, at *9 (D.Nev. Dec.16, 2014)).

[23] Restatement (Third) of Torts: Prod. Liab. § 6 cmt. b (1998).

4

purpose.[24]  So I predict, as other judges in this district have, that the Nevada Supreme Court would extend the learned-intermediary doctrine to drug manufacturers.

**B.      The learned-intermediary doctrine bars Stephens's failure-to-warn claims.**

Although the issue has rarely come up, courts seemingly recognize that veterinarians are learned intermediaries in their treatment of animals.[25]  Indeed, veterinarians exercise their discretion and judgment in making prescribing decisions just like physicians, and they are much better positioned than drug manufacturers to determine a drug's risks to a specific animal.  So if Sarah's veterinarian was warned of the symptoms that Stephens claims would have caused her to avoid giving Librela to Sarah, the learned-intermediary doctrine absolves manufacturer Zoetis of its duty to warn and precludes Stephens's failure-to-warn claims.

The symptoms that Stephens alleges that Librela caused in Sarah are hiding, reduced appetite, urinary incontinence, weakness, lethargy, increased water consumption, disorientation, and pacing.[26]  To the extent Stephens claims that Librela's label did not warn her or her veterinarian of these symptoms,[27] that theory is plainly belied by the text of Librela's label, which Stephens attached to her complaint.  Each of Sara's alleged symptoms was listed on that label (or attributable to symptoms that were), which listed lethargy, lameness, anorexia, and inappropriate urination as possible adverse events.[28]  And Stephens does not identify in her

---

[24] *Klasch*, 264 P.3d at 1158.

[25] *Haste v. Am. Home Prods. Corp.*, 577 F.2d 1122, 1125 (10th Cir. 1978) ("In this chain or sequence of events, the defendant discharged its duty to plaintiffs by the warnings to the veterinarians."); *Osburn v. Anchor Lab'ys, Inc.*, 825 F.2d 908, 913 (5th Cir. 1987) (noting that the learned-intermediary doctrine would likely apply to veterinarians to the extent they are treating animals).

[26] ECF No. 20 at ¶¶ 4, 12, 14.

[27] *Id.* at ¶¶ 20–21.

[28] *Id.* at 5.

complaint or response any specific symptom that was not included.  So I find that the learned-intermediary doctrine precludes Stephens's failure-to-warn claim.

**C.      The doctrine also bars an inadequate-warning theory.**

In her opposition to Zoetis's motion to dismiss, Stephens suggests that her theory goes beyond a failure to warn and also includes the alternative theory that the warning given was inadequate.[29]  This theory is based on her complaint's allegations that "[t]o the extent that [Zoetis] did warn veterinarians of some of the [a]dverse [e]ffects such as inappropriate urination or lethargy, those warnings did not adequately convey the prevalence or severity of the [a]dverse [e]ffects."[30]  As two examples of these inadequacies, she alleges that the "field studies" mentioned on the label did not communicate "the prevalence and severity of the [a]dverse [e]ffects," and the field studies conflicted with the "hundreds" of adverse-event reports nationwide "between May 2023 and June 2024."[31]

But this alternate theory doesn't stave off dismissal under the learned-intermediary doctrine because Stephens can't tie these alleged inadequacies to her legal injury.  "In Nevada, when bringing a strict product liability failure-to-warn case, the plaintiff carries the burden of proving, in part, that the inadequate warning caused [her] injuries."[32]  And the doctrine still bars recovery if all relevant information was disclosed to the intermediary.[33]

---

[29] ECF No. 29 at 9.

[30] ECF No. 20 at ¶ 23.

[31] *Id.* at ¶¶ 17–18.

[32] *Rivera v. Philip Morris, Inc.*, 209 P.3d 271, 274 (Nev. 2009).

[33] *Klasch*, 264 P.3d at 1158 ("Under the learned-intermediary doctrine, a drug manufacturer is immune from liability to a patient taking the manufacturer's drug *so long as the manufacturer has provided the patient's doctor with all relevant safety information for that drug*." (emphasis added)).

Stephens has not plausibly alleged that this missing information was relevant such that it would've caused her veterinarian not to recommend Librela. As Zoetis points out, veterinarians have prescribed tens of millions of doses of Librela, so warning of "hundreds" of additional incidents would—at most—raise the potential risk by a thousandth of a percent.[34] It is simply not plausible that such an imperceptible increase in risk would be relevant information to a prescribing veterinarian[35] or that this missing information would've altered the veterinarian's decision.[36] Stephens's allegation that Librela's label didn't convey the severity of the symptoms is conclusory, unsupported by any details, and belied by the contents of the label itself.[37] So I find that the entirety of Stephens's complaint must be dismissed under the learned-intermediary doctrine.

---

[34] ECF No. 30 at 6 ("[G]iving Plaintiff's assertion of 'hundreds' of adverse event reports its most generous interpretation, i.e., assuming there were nine hundred and ninety-nine adverse events, when divided by even just a million Librela treatments (as opposed to tens of millions), the rate would be a 0.000999.").

[35] *See, e.g.*, *Himes*, 549 P.3d at 922 ("The manufacturer need not warn of risks that are merely speculative or conjectural, or so remote and insignificant as to be negligible." (cleaned up)); *Luke v. Fam. Care & Urgent Med. Clinics*, 246 F. App'x 421, 422–23 (9th Cir. 2007) (holding that 1-in-25,000 chance of liver failure was not a material risk and did not implicate duty to warn under Washington's informed-consent law).

[36] *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099 (5th Cir. 1991) ("While we must draw reasonable inferences in favor of the non-moving party, we do not find reasonable the inference that a less than one percent increase (from four percent to 4.03 percent per annum) in the risks associated with the valve replacement would have changed Dr. Gibson's decision."); *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 817 (5th Cir. 1992) ("The possibility that Dr. Myers would have changed his decision if he had been warned of the [less-than-one-percent chance of] rare seizures caused by Accutane is too remote to create a genuine issue of fact with respect to warning causation.").

[37] ECF No. 20 at 5.

**D.      Amendment would be futile.**

Stephens also requests leave to amend her complaint to cure any defects.[38] Zoetis opposes that request as futile.[39] Although the court "shall grant leave to amend freely when justice so requires,"[40] leave to amend should be denied if the deficiencies cannot be cured and further amendment would be futile.[41]

Amendment would not save Stephens's case. In her single-sentence request to amend, Stephens does not explain how amendment would allow her to fix her learned-intermediary-doctrine or causation issues.[42] Nor has she shown that additional or more specific allegations would circumvent the doctrine or show how her veterinarian's knowledge of the near-imperceptible increase in risk would have altered prescribing decisions. Given Stephens's current allegations, she likely could not allege such a claim without identifying a wholly new failure-to-warn theory. And nothing Stephens has provided indicates that she would be able to do so. So I deny Stephens leave to amend because she has not shown that further amendment would not be futile.[43]

---

[38] ECF No. 29 at 18.

[39] ECF No. 24 at 11.

[40] *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (cleaned up).

[41] *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.").

[42] *See* ECF No. 29 at 18.

[43] *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1052 (9th Cir. 2008) ("Appellants fail to state what additional facts they would plead if given leave to amend. . . . Accordingly, amendment would be futile."); *Puri v. Khalsa*, 674 F. App'x 679, 684 (9th Cir. 2017) ("Because the plaintiffs do not identify what additional facts they would plead if they were granted leave to amend, the court did not abuse its discretion by denying leave to amend."); *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) ("[T]he district court did not abuse its discretion when it denied Appellants' first request to amend the complaint because Appellants did not propose any new facts or legal theories for an amended complaint and therefore gave the Court no basis to allow an amendment.").

**Conclusion**

IT IS THEREFORE ORDERED that Zoetis's motion to dismiss **[ECF No. 24] is GRANTED**.  Stephens's complaint is **DISMISSED** with prejudice based on the learned-intermediary doctrine and without leave to amend.  The putative class claims are dismissed without prejudice but also without leave to amend.[44]  The Clerk of Court is directed to **ENTER JUDGMENT ACCORDINGLY** and **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
March 25, 2026

---

[44] Zoetis also moves to strike Stephens's class allegations, arguing that individual factual disputes predominate over the common class allegations.  ECF No. 24 at 19.  Because I dismiss the entirety of Stephens's claims and no class has yet been certified, I dismiss the putative claims without prejudice and thus deny as moot the request to strike the class-action allegations.